# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| HEI RESOURCES, INC., F/K/A | § | |
| HEARTLAND ENERGY, INC. and | § | |
| CHARLES REED CAGLE, | § | |
| | § | |
| Plaintiffs, | § | CIVIL ACTION No. 3:09-cv-403-M |
| | § | |
| v. | § | |
| | § | |
| VENTURE RESEARCH INSTITUTE, and | § | |
| BERNALDO D. BICOY, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER OF DISMISSAL</u>

Before the Court is Defendants' Motion to Dismiss [Docket Entry #6].  For the reasons

below, the Motion is **GRANTED**.

*Background*

Defendant Venture Research Institute ("VRI") is incorporated in California, where it also

has its principal place of business.  Defendant Bernaldo D. Bicoy ("Bicoy"), VRI's President,

resides in California.  VRI operates a website,[1] the address of which is http://www.vcresearch.info.

It contains an interactive message board, where investors can share their opinions about various

investment opportunities and companies.  VRI's message board is divided into forums dedicated to

specific topics, including one entitled "Oil, Gas and Mining."  Most of the posts on the forum are

by anonymous users, not employed by Defendants, who typically use the username "GUEST."[2]

VRI, through Bicoy, posts through the username "ADMIN."  Typically, the ADMIN posts reprint

---

[1] The Complaint alleges that both Defendants operate the website, but Bicoy's Declaration, uncontradicted by other evidence, states that VRI operates it.

[2] The usernames are typically lower case on the message board, but to separate them from the balance of the text, they are referred to in this Opinion in all capital letters.

third-party material, such as posts of other users, and purportedly anonymous tips.  Sometimes, the

ADMIN posts express opinions.  Plaintiffs HEI Resources, Inc. ("HEI"), a Texas corporation, and

Plaintiff Charles Reed Cagle, a Colorado resident, accuse Defendants of defaming them through

ADMIN posts on the Oil, Gas, and Mining forum.  On March 3, 2009, after demanding the

removal of certain posts from the website, Plaintiffs filed suit, accusing Defendants of defamation,

tortious interference with business relationships and contract, and business disparagement.  On

April 23, 2009, Defendants moved to dismiss for lack of personal jurisdiction under Federal Rule

of Civil Procedure 12(b)(2).  Plaintiffs have also moved for jurisdictional discovery.

<u>Allegedly Defamatory Posts</u>

Plaintiffs attach to the Complaint the allegedly defamatory posts, as well as the letter

demanding that Defendants remove certain posts from the website.  The first allegedly

defamatory ADMIN post is titled "Heartland Sales Scripts, Anonymously Mailed to VRI by (we

assume) an Ex Salesperson."  It reprints what is purportedly the script used by HEI

representatives, in cold calls, to convince prospective investors to invest in Heartland Energy

Development, a non-party to this case described as an independent natural gas and oil producer

from Denver, Colorado.  The script gives the caller suggested answers to possible concerns of

prospective investors.[3]  The script states that if the prospective investor wants to show

documentation to an attorney, the attorney will confirm that Heartland is "a true Texas J.V. [joint

venture]."  A second allegedly defamatory post states that there is an unconfirmed rumor of a

lawsuit against Heartland "bubbling up out of Texas," and reprints an excerpt from an article

about Heartland, which describes a joint SEC taskforce set up to spot fraudulent oil and gas

---

[3] The Complaint does not describe how the script is defamatory.  It  instead claims that "statements made in these
[forums] . . . are incredibly one-sided, false, and defamatory statements, that falsely accuse Plaintiffs of engaging in
unlawful activity in order to convince potential joint venturers that they should not do business with Plaintiffs."
This statement is not on its face defamatory.

offerings, drawing its members from agencies in Texas, Louisiana, Arkansas, Oklahoma, and Kansas.  A third ADMIN post discusses what is involved in a "typical oil and gas scam" as well as several court decisions relating to investing in joint ventures, and gives advice to investors considering investing in oil-related joint venture projects.  Plaintiffs also attach to the Complaint a letter from their attorneys to Bicoy, as President of VRI, demanding the removal of a post containing excerpts from a Colorado state court lawsuit filed against Heartland Energy of Colorado, LLC, a non-party to this case, claiming that the post is defamatory.

Along with their response brief to the Motion to Dismiss, Plaintiffs filed approximately two hundred pages of posts from the Oil, Gas, and Mining forum, many of which are from ADMIN.

Supplemental Briefing

On August 7, 2009, the Court allowed Plaintiffs to supplement their evidence, and they submitted an ADMIN post that reprints a complaint filed in a Colorado state court against HEI Resources, Cagle, and others.  Plaintiffs argue Defendants' defamation of them is ongoing.

*Legal Standard*

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if the long-arm statute of the forum confers personal jurisdiction over that defendant, and the exercise of such jurisdiction by the forum is consistent with due process.[4]  The Texas long-arm statute reaches to the limits of due process, and therefore a court need only determine whether the exercise of personal jurisdiction over the moving defendant is consistent with due process.[5]  The Due Process Clause of the Fourteenth Amendment to the United States Constitution permits the exercise of personal jurisdiction over a nonresident defendant when (1)

---

[4] *Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir. 1999); *Electrosource, Inc. v. Horizon Battery Tech., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999) (citing *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex. 1990)).
[5] *Guardian Royal Exch. Assur., Ltd. v. English China Clays P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991).

that defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state;[6] and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice."[7]

When personal jurisdiction is challenged, and no evidentiary hearing occurs, the party seeking to invoke jurisdiction must make a *prima facie* showing of jurisdiction, with the court resolving all disputed facts in favor of jurisdiction.[8]  When determining whether the plaintiff has made a *prima facie* case, the court may consider any affidavits, interrogatories, deposition testimony, or any other recognized discovery method,[9] not considering conclusory allegations.[10] There are two categories of personal jurisdiction, general and specific.  General jurisdiction exists when a defendant's contacts with the forum state are "continuous and systematic," allowing the court to exercise jurisdiction over that defendant for causes of action unrelated to the defendant's connections to the state.[11]  For specific jurisdiction to exist, the plaintiff's claim must arise out of or be related to those contacts.[12]  In determining whether specific jurisdiction exists, the court must conduct the minimum contacts analysis separately for each cause of action.[13]  If a plaintiff makes a *prima facie* case that minimum contacts exist, the defendant has the burden of demonstrating that the exercise of jurisdiction would offend traditional notions of fair play and substantial justice.[14]

When determining whether personal jurisdiction may be exercised over a non-resident

---

[6] *See Burger King v. Rudzewicz*, 471 U.S. 462, 474 (1985).

[7] *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001).

[8] *See Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).

[9] *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).

[10] *Panda Brandywine*, 253 F.3d at 869.

[11] *Mink v. AAAA Dev., LLC,* 190 F.3d 333, 336 (5th Cir. 1999); s*ee also Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.9 (1984).

[12] *See Burger King*, 471 U.S. at 472 (1985).

[13] *Stelax Indus. Ltd. v. Donahue*, No. 3:03-CV-923-M, 2004 WL 733844, at *2 (N.D. Tex. Mar. 25, 2004) (Lynn, J.).

[14] *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999).

defendant who operates an internet website, the Fifth Circuit has adopted the "sliding scale" test articulated in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*[15]  The *Zippo* test examines the "nature and quality of the commercial activity that an entity conducts over the Internet,"[16] and categorizes the Internet use into one of three levels of interactivity.  At one end of the scale, where a defendant has established a "passive website" that does nothing more than advertise on the Internet,[17] exercising personal jurisdiction over such a website based on Internet-related contacts alone is inappropriate.  On the other end of the spectrum is a defendant who "clearly does business over the Internet by entering into contracts with residents of other states which involve the knowing and repeated transmission of computer files over the Internet."[18]  Exercising specific personal jurisdiction over such "active" websites is appropriate.  In between are defendants with websites that allow a visitor to exchange information with a host computer, and in such a situation, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the website."[19]

   When analyzing claims of intentional torts like defamation, the Fifth Circuit also applies the "effects test," first formulated in *Calder v. Jones*.[20]  Under the effects test, an act done outside the state, but which causes injury inside the state, may support the exercise of personal jurisdiction if the defendant "expressly aimed" his conduct towards the forum, thus making the exercise of personal jurisdiction reasonably foreseeable.   However, the mere foreseeability that harm will be suffered by someone in the forum is insufficient.  The Fifth Circuit, quoting the Seventh Circuit, has stated that "the key to *Calder* is that the effects of an alleged intentional tort

---

[15] 952 F.Supp.1119 (W.D. Pa. 1997).  *See Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002) (discussing *Zippo* test's usage in Fifth Circuit).

[16] *Mink*, 190 F.3d at 336 (citing *Zippo*, 952 F.Supp. at 1124).

[17] *Id.*

[18] *Id.* (internal citations and quotations omitted).

[19] *Id.*

[20] 465 U.S. 783, 789-90 (1984).

are to be addressed as part of the analysis of the defendant's relevant contacts with the forum."[21]

The Fifth Circuit has recently noted that the exercise of personal jurisdiction based solely on the

effects test is "rare."[22]

*Analysis*

This is the third time in the last year that Defendant VRI has been sued in this district for

defamation. This Court, in *Triple Diamond Energy Corporation v. Venture Research Institute,*

*Inc.,*[23] held that VRI was not subject to personal jurisdiction in Texas over claims arising out of

anonymous postings made on its website, basing its holding in part on the fact that VRI had not

authored any of the posts claimed to be defamatory. In *Aspen Exploration, Inc. v. Venture*

*Research Institute, Inc.,*[24] Judge Godbey dismissed a similar suit because of a lack of personal

jurisdiction, also noting that none of the allegedly defamatory posts were authored by VRI. In

contrast to *Triple Diamond* and *Aspen*, in this case at least some of the allegedly defamatory

posts *were* authored by VRI, through Bicoy. As to posts not authored by VRI, the Court relies

on the analysis in *Triple Diamond* and concludes that posts unrelated to the alleged defamation

cannot serve as a basis for the exercise of personal jurisdiction over VRI or Bicoy.[25]

**I. Motion to Dismiss**

A. <u>Interactivity</u>

Plaintiffs argue that the VRI website is "highly interactive," because Bicoy participates

on the website as a poster for VRI. Plaintiffs also note that in one instance, Bicoy established a

new forum, based on visitor requests. Plaintiffs argue that these facts establish that VRI's

---

[21] *Allred v. Moore & Peterson,* 117 F.3d 278, 286 (5th Cir.1997), *cert. denied*, 522 U.S. 1048 (1998) (quoting *Wallace v. Herron*, 778 F.2d 391, 395 (7th Cir. 1985), *cert denied*, 475 U.S. 1122 (1986)).

[22] *Moncrief Oil, Int'l, Inc. v. Gazprom*, 481 F.3d 309, 314 (5th Cir. 2007).

[23] No. 3:08-CV-0050-M, 2008 WL 2620352 (N.D. Tex. July 3, 2008) (Lynn, J.).

[24] No. 3:08-CV-1393-N (N.D. Tex. Jan. 23, 2009) (Godbey, J.).

[25] *See Triple Diamond*, 2008 WL 2620352, at *6-7.

website exhibits a high level of interactivity.  Defendants counter that the VRI website has the same level of interactivity as that found in *Revell v. Lidov*, where users also posted messages on an Internet forum, and that at most, VRI's website is in the middle of the *Zippo* spectrum, as this Court held in *Triple Diamond*.[26]

The Court again concludes that the interactivity of the VRI website falls in the middle of the *Zippo* spectrum.  The VRI website differs in several respects from websites found to be highly interactive;[27] it does not create contracts with Texas residents or sell products and services to them.  The ability of users to read and post messages on VRI's website is what was present in *Revell v. Lidov*, and the Fifth Circuit found its facts fell in the middle of the *Zippo* scale.

B.  Specific Jurisdiction

Plaintiffs' arguments in support of jurisdiction focus on the allegation that the website targets Texas residents specifically and that the brunt of the harm of Defendants' conduct is felt in Texas, thereby establishing jurisdiction under the *Calder* effects test.  Plaintiffs argue that the forum specifically targets Texas and Texas residents because it: (1) contains a legal referral page that refers visitors to Texas attorneys; (2) provides advice regarding Texas securities laws and investing in Texas, as well as links to search Texas corporations; (3) contains an "Ask a Lawyer" page where site visitors can receive legal advice from a Texas attorney; (4) provides links and references to Texas governmental entities; (5) posts notices and reprints orders from the Texas State Securities Board; (6) summarizes conversations between Bicoy and regulators at the Texas State Securities Board; (7) quotes, discusses, and reprints articles from Texas newspapers; (8) discusses Texas state law; (9) references the predominance of Texas in the oil and gas industry; and (10) states that there are 11,000 oil and gas firms in the Dallas/Fort Worth area.

---

[26] *Id*. at *5.
[27] *Id*. at *6.

In support of Plaintiffs' opposition to the Motion, Cagle filed a Declaration attesting to the following facts:

- HEI forms, and acts as manager of, joint ventures engaged in oil and gas exploration and production in Texas.

- All of HEI's joint ventures are formed as partnerships under applicable Texas law.

- HEI has formed more than eighty such ventures over a period of ten years, and has had over fifty Texas residents as venturers (investors) in the projects.

- The largest number of suppliers of oilfield goods and services are located in Texas.

- The industry partners who participate with HEI in oil and gas drilling and exploration activities are almost exclusively located in Texas.

- The largest number of mineral rights owners with which HEI does business are located in Texas.

- The contractors with which HEI does business in connection with oil and gas drilling and exploration activities are almost exclusively located in Texas.

The Declaration further states that the brunt of the harm done by the allegedly defamatory statements is felt by HEI in Texas. It further urges that "anyone who follows [the oil and gas] industry" would know that defamatory comments directed towards any participant in the oil and gas industry would do the most harm in Texas.

Defendants' main argument against the application of the *Calder* effects test is that the website's intended audience is all investors in the oil and gas industry, not specifically those from Texas, and that Texas is not the geographic focus of VRI's posts. In support, Bicoy submits a Declaration, stating that while he occasionally posts on the message board, VRI is merely an intermediary to provide a forum for third parties to express their thoughts, vent their frustrations, and/or request information. He states that because the forum is open to anyone on the Internet, posts can come from anywhere in the world, and that because it speaks to all investors, it is not targeted to readers of any particular state, or even country. Bicoy states that

VRI does not maintain a registered agent in Texas, does not maintain a place of business, office, or telephone number in Texas, and has no employees, servants or agents in Texas. Bicoy further states that VRI does not perform any operations in Texas, does not own, lease, or rent any real or personal property in Texas, does not maintain Texas bank accounts, does not pay taxes in Texas, and does not advertise in Texas. Bicoy states he similarly does not maintain any physical presence in Texas, and does not conduct business in Texas.

First, the Court first rejects the argument that VRI's "Ask a Lawyer" page, and the general information posted about Texas law, regulatory activities, and contact information is a basis for the exercise of specific jurisdiction in Texas.[28] In determining whether the acts which are the subject of suit give rise to jurisdiction in Texas, the Court must determine whether Defendants directed the alleged torts towards Texas. Other posts, not alleged to be defamatory, do not provide a relevant contact.[29] VRI's management of other posts, and its posting of other information, most of which is publically available, is not a basis for the exercise of jurisdiction.[30]

Second, the Court rejects the argument that VRI's posts are targeted at Texas residents specifically. Because much of the oil and gas industry is centered in Texas, Plaintiffs submit that posting of allegedly defamatory information on the Internet about the oil and gas industry *ipso facto* subjects the poster to personal jurisdiction in Texas. This argument misinterprets the effects test. This case is clearly distinguishable from *Calder* and subsequent cases citing it.

Because all the alleged harm to Plaintiffs spring from posts on VRI's website, the Court analyzes the tortious interference and business disparagement claims along with the defamation

---

[28] *See Triple Diamond*, 2008 WL 2620352, at *7 (rejecting identical argument).

[29] *See Burger King*, 471 U.S. at 472-73 (citing *Helicopteros*, 466 U.S. at 414)); *see also Triple Diamond*, 2008 WL 2620352, at * 6 ("The mere possibility of a Texas audience does not establish purposeful availment by VRI of the benefits and protections of Texas, which is necessary to satisfy due process.") (collecting authority).

[30] *See Triple Diamond*, 2008 WL 2620352, at *7 ("[T]he general information provided by VRI on its website about Texas law, regulatory activities, and contact information is not a basis for specific jurisdiction over VRI in Texas.").

claims.  The relevant jurisdictional facts do not vary from claim to claim.

In *Calder*, the plaintiff, a California actress, accused writers and editors of libeling her, in a tabloid article published in Florida.  The United States Supreme Court concluded that the defendants knew that the harmful effects of the alleged libel would be felt by the plaintiff in California, and that the defendants intentionally and expressly aimed their allegedly tortious conduct at California.[31]  The Court noted that the "focal point" of the article was California, because the article was drawn primarily from California sources and it focused on an actress whose career was based in California.[32]  Furthermore, California was the site of the newspaper's largest circulation, of more than 60,000 copies.  Therefore, the Court found that "California is the focal point both of the story and the harm suffered."[33]

Post-*Calder* cases involving Internet defamation have required that the allegedly defamatory article creates harm in the forum state, and focuses more directly on the readers of the forum state than on others.  For example, in *Revell*, the former associate director of the FBI, a Texas resident, sued two nonresidents, an assistant professor and a university, for defamation arising out of the professor's authorship of an article posted on the university's Internet bulletin board.  The article discussed an alleged governmental conspiracy to cover up the Pan Am 103 bombing.  The Fifth Circuit, in concluding there was no jurisdiction over the defendants in Texxas, emphasized that the allegedly defamatory post did not target Texas readers specifically; rather, it made an appeal to American citizens, alerting them to the alleged conspiracy.[34]  The Fifth Circuit held that for the exercise of  personal jurisdiction based on an alleged defamation on an Internet message board required a "more direct aim" than mere knowledge that harm will

---

[31] *Calder*, 465 U.S. at 789-90.
[32] *Id*. at 783.
[33] *Id*. at 789.
[34] *Revell*, 317 F.3d at 469.

be felt where the defendant resides, as that will be the case in any defamation.[35]   The Fifth

Circuit stated a court should "look to the geographic focus of the article, not the bite of the

defamation, the blackness of the calumny, or who provoked the fight."[36]   Other courts in this

district have also rejected jurisdictional claims under the effects test where the injury was

localized in the forum state, but there was no evidence that the article specifically targeted the

forum's residents.   In *Archer & White, Inc., v. Tischler*,[37] Judge Fitzwater, of this district,

confronted a claim that the defendant, a dentist, had libeled two other dentists on an Internet

message board devoted to dentistry.   Judge Fitzwater, citing *Revell*, held that in the absence of

evidence of intent to "target or focus on Texas readers as distinguished from readers in other

states," the court lacked personal jurisdiction over the makers of the alleged defamation.[38]   This

Court, in *Dymatize Enterprises, Inc. v. Reflex Nutrition, Ltd.*, similarly declined to exercise

jurisdiction over nonresidents who posted allegedly defamatory statements on bodybuilding.com,

an Internet message board.[39]   In the absence of evidence that the readership of bodybuilding.com

was predominantly from Texas, or that defendants specifically targeted a Texas readership, this

Court found that specific jurisdiction was lacking.[40]

      This case is similar to the Fourth Circuit's decision in *Young v. New Haven Advocate*,[41]

which the Fifth Circuit approved of in *Revell*, and which Judge Fitzwater cited in *Archer and*

*White*.   In *Young*, the warden of a Virginia prison filed suit in Virginia against a Connecticut

newspaper, for posting allegedly defamatory articles on its website.   The plaintiff argued that

---

[35] *Id.* at 476.
[36] *Id.*
[37] No. Civ.A.3:03-CV-0742-D, 2003 WL 22456806 (N.D. Tex. Oct. 23, 2003) (Fitzwater, J.).
[38] *Id.* at *3.
[39] No. 3:07-CV-907-M, 2008 WL 161021, at *4 (N.D. Tex. Jan. 17, 2008) (Lynn, J.) ("The Court finds the analysis in *Archer* persuasive on the material issue of whether [the defendant] purposefully directed his comments at Texas readers. Here, Plaintiff fails to establish that the [website's] readership is predominantly from Texas, or that either [defendant] specifically targeted Texas residents.") (collecting authority).
[40] *Id.* at *5.
[41] 315 F.3d 256 (4th Cir. 2002).

11

because the article was accessible by Virginia residents, and discussed the Virginia prison and its warden, the defendant was subject to personal jurisdiction in Virginia under the effects test. The plaintiff argued that the damage to the plaintiff's reputation would be felt in Virginia, "expos[ing the plaintiff] to public hatred, contempt, and ridicule in Virginia, where he lived and worked."[42] The Fourth Circuit rejected those arguments, holding that, because the newspaper did not manifest an intent to target and focus on Virginia readers, personal jurisdiction was lacking.

It should be noted that *Calder*'s effects test is completely inapplicable to Plaintiff Cagle, who is a resident of Colorado, not Texas. With respect to the application of the effects test to the statements about HEI, the Court concludes that the geographic focus of the allegedly defamatory posts was not Texas or its residents. Although the posts mention Texas, the sales pitch references non-party Heartland Energy Development, alleged to be from Denver, Colorado. The second post references an SEC task force with members of state agencies from Texas, Louisiana, Arkansas, Oklahoma, and Kansas, to investigate fraudulent oil and gas ventures. Nothing in the allegedly defamatory posts specifically addresses readers in Texas. The geographic focus of the posts directed to Heartland entities and Cagle is more directed to Colorado, than Texas; the sales script references Colorado, the demand letter complains of VRI's posting of excerpts of a lawsuit filed against Heartland Energy of Colorado, in Colorado, and the supplemental evidence filed by the Plaintiffs relates to the reprinting of another Colorado lawsuit filed against the Defendants in Colorado.[43]   While it is unquestioned that reputational harm will be felt in one's home state, and Plaintiffs submit evidence that Plaintiff HEI's business is centered in Texas, if residence of the plaintiff is sufficient, then every defendant in a defamation claim will be subject to personal jurisdiction where the plaintiff resides. This position has been repeatedly rejected by various

---

[42] *Id.* at 262.
[43] In Texas, the media has a qualified privilege to publish fair, true, and impartial accounts of judicial proceedings. *See Herald-Post Publ'g v. Hill*, 891 S.W.2d 638, 639 (Tex. 1994).

courts.[44]  The posts at issue are otherwise related to Texas only because of the mere fortuity that much of the oil and gas activity in this country is conducted in Texas.  The Court is unconvinced that there is the requisite focus on Texas so as to permit the assertion of personal jurisdiction over Defendants in Texas, without other contacts to this state.

   C.  General Jurisdiction

Almost as an afterthought, Plaintiffs also argue at the end of their brief that Defendants are subject to general jurisdiction in Texas, based on the alleged "dominant role" of Texas in discussions hosted on the VRI website.  The Court considered and rejected this argument in *Triple Diamond*,[45] and rejects it again now.  The uncontroverted evidence in this case shows that Defendants do not have a continuous presence in Texas nor do they have the substantial contacts required for the exercise of general jurisdiction.[46]  As the Fifth Circuit stated in *Revell*, "because even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction-in other words, while it may be doing business *with* Texas, it is not doing business *in* Texas."[47]

**II. Motion for Jurisdictional Discovery**

Among other things, Plaintiffs also seek discovery of: (1) all postings made by Defendants relating to Plaintiffs, including all such postings that have been edited or removed by Defendants; (2) all versions of a "VRI Note" posted by Defendants which contains allegedly false and defamatory statements regarding Plaintiffs; (3) the sales script referenced in the

---

[44] *See Revell*, 317 F.3d at 476; *Archer and White*, 2003 WL 22456806, at *3; *Young*, 315 F.3d at 262-64; *Dymatize*, 2008 WL 161021, at *4.  *See also Mullins v. Testamerica, Inc.*, 564 F.3d 386, 401 (5th Cir. 2009).
[45] 2008 WL 2620352, at *6.
[46] *See Revell*, 317 F.3d at 471 (rejecting claim of general jurisdiction over website and its operator and collecting authority).
[47] *Id.*

Complaint; and (4) information regarding the number of Texas users that reside in, or submitted messages from, Texas.

In order to be entitled to jurisdictional discovery, a plaintiff must make a preliminary showing of jurisdiction.[48]  In *Fielding v. Hubert Burda Media, Inc.*, the Fifth Circuit cited with approval the Third Circuit's standard, articulated in *Toys"R"Us, Inc. v. Step Two, S.A.*, that "[i]f a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts . . . the plaintiff's right to conduct jurisdictional discovery should be sustained."[49]  The decision to allow jurisdictional discovery is within the discretion of the district court.[50]

Plaintiffs have failed to make such a preliminary showing of jurisdiction.  First, general jurisdiction is clearly lacking.  With regard to specific jurisdiction, Defendants fail to put forth any evidence that Defendants targeted a Texas audience with the allegedly defamatory posts.  The evidence before the Court shows that Defendants communicate to investors internationally, rather than focusing on those from Texas.  The Court declines to allow jurisdictional discovery based on the record before it.

*Conclusion*

The Court **GRANTS** Defendants' motion and dismisses this case for lack of personal jurisdiction over both Defendants.  Plaintiff's motion for jurisdictional discovery is **DENIED**.

**SO ORDERED**.

August 26, 2009.

Barbara M. G. Lynn
UNITED STATES DISTRICT JUDGE

---

[48] *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005).
[49] 318 F.3d 446, 456 (3d Cir. 2003).
[50] *Fielding*, 415 F.3d at 419.